IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | Chapter 7 |
| ) | |
| Vincent Edward Carter, ) | Case No. 05 B 31646 |
| ) | |
| Debtor. ) | |
| Structured Asset Services, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. 05 A 02602 |
| ) | |
| Vincent Edward Carter, ) | |
| ) | |
| Defendant. ) | Hon. Susan Pierson Sonderby |

## MEMORANDUM OPINION

This cause comes to be heard on the Amended Motion of Structured Asset Services, LLC for Summary Judgment. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The proceeding involves a determination as to dischargeability of a particular debt and an objection to discharge and is therefore a core proceeding under 28 U.S.C. §157(b)(2)(I) and (J). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

The debtor, Vincent Edward Carter won $1,000,000 in the Indiana lottery in May of 1994. The prize was payable in twenty equal annual installments of $50,000 ending in 2014. In May of 1998, Carter executed a promissory note in favor of Peoples Lottery Foundation, Inc. ("PLF") in the principal amount of $181,984, payable in nine annual installments of $36,000 beginning February 26, 1999 and ending February 26, 2007. Carter's obligations under the PLF note were secured by the lottery prize payments from the Indiana Lottery, pursuant to a Lottery Prize Loan and Collateral

Security Agreement. Carter made the February 1999 payment under the PLF note, but failed to make any further payments to PLF, or its assignee Structured Asset Services LLC ("Structured Asset").

In September of 2000, Carter received a letter from the Indiana Lottery giving him the option to receive the remainder of his lottery winnings in a lump sum. He agreed, and on October 10, 2000, Carter received a check from the Indiana Lottery in the amount of $328,370.70. He deposited it into his bank account. Carter did not inform PLF of his receipt of the check.

Carter spent all of the $328,370.70 in less than four months after its receipt. He used $29,000 to purchase a van for his wife and a car for his mother. He gave his wife $100,000. Carter explains that he lost the rest of the money gambling in Las Vegas and on casino boats. No portion of the money was paid to PLF or Structured Asset.

On December 21, 2001, Structured Asset filed a two-count complaint against Carter in the Circuit Court of Cook County Illinois (the "State Court") for breach of contract and unjust enrichment. On June 21, 2005, the State Court entered a judgment in favor of Structured Asset and against Carter in the amount of $383,770.52, plus post-judgment interest. In its judgment order, the State Court declared Structured Asset "the owner of the net lottery payments due and payable on February 26, 1999 through February 26, 2007 to the exclusion of any other person/entity" and "the owner of a security interest" in those payments, with a "first, perfected lien." The State Court found that the "Security Agreement and Financing Statement are valid and enforceable" and required Carter to "abide by them." Carter was ordered to "direct all periodic payments received by him pursuant to the Lottery Prize Loan and Collateral Security Agreement . . . to satisfy the Judgment."

On August 11, 2005 (the "Petition Date"), less than two months after the State Court's judgment was entered, Carter filed a voluntary petition for relief under chapter 7 of the Bankruptcy

Code. Carter filed Schedules of Assets and Liabilities and Statement of Financial Affairs in the bankruptcy case. He declared under penalty of perjury that they were "true and correct to the best of [his] knowledge, information, and belief."

Carter listed a $44,000 unsecured priority debt to the Internal Revenue Service in Schedule E. Structured Asset's claim in the amount of $383,770.50 is listed in Schedule F as an unsecured nonpriority claim. Sixteen other creditors are listed on Schedule F as holding unsecured claims aggregating approximately $40,000. All but one of those claims are described as credit card debts incurred from 1986 to 2005. Carter stated in response to question number 2 of the Statement of Financial Affairs that he received no income from a source other than employment or operation of a business in the two years preceding the Petition Date.

The last day for filing complaints objecting to discharge or to determine dischargeability of certain debts against Carter was November 14, 2005.[1] On that date, Structured Asset electronically filed on the Carter bankruptcy case docket a document entitled "Complaint Objecting to Discharge of Debtor" (the "Complaint"). The e-filer misidentified the Complaint on the docket as a "counterclaim." The Complaint contains allegations that are typically seen in an objection to discharge complaint brought pursuant to section 727 of the Bankruptcy Code, e.g., allegations that the debtor concealed records from which his financial condition might be ascertained and the debtor failed to adequately explain the whereabouts of certain assets. Despite those typical section 727

---

[1] Rule 4004 of the Federal Rules of Bankruptcy Procedure provides that complaints objecting to discharge under § 727(a) of the Bankruptcy Code are to be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). Fed. R. Bank. P. 4004(a). A debtor forfeits the right to rely on the deadline if the untimeliness of the filing of the complaint is not raised before the court reaches the merits. Kontrick v. Ryan, 540 U.S. 443, 458-59, 124 S.Ct. 906, 917-18, 157 L.Ed.2d 867 (2004). The same 60-day deadline applies to complaints to determine dischargeability of debts under section 523(c) of the Bankruptcy Code. Fed. R. Bank. P. 4007(c).

3

allegations, the Complaint only referenced section 523 of the Bankruptcy Code. Section 523 governs the dischargeability of particular debts, not whether a debtor should be granted a general discharge of all dischargeable debts, which is within the purview of section 727. On November 15, 2005, a day after the deadline for filing complaints objecting to discharge, Structured Asset electronically filed the Complaint again, this time as a separate complaint, which initiated this adversary proceeding.

On November 21, 2005, an Order of Discharge was entered in Carter's bankruptcy case by the bankruptcy court clerk's office, presumably because the clerk mistakenly viewed the Complaint as one seeking determination of dischargeability in light of the Complaint's repeated references to section 523.[2] The bankruptcy case was closed on February 14, 2006.

On February 27, 2006, Carter filed a motion in this adversary proceeding to dismiss the Complaint on the ground that it was not timely filed. Structured Asset responded, pointing out that it filed the Complaint on the deadline, but inadvertently filed it on the bankruptcy case docket and misidentified it as a counterclaim. On May 23, 2006, an order was entered withdrawing Carter's motion to dismiss.

On May 22, 2007, Structured Asset filed the Amended Complaint, which contains many of the same allegations as the Complaint, but now specifically states that it is also being brought pursuant to sections 727(a)(3), (a)(4), and (a)(5) of the Bankruptcy Code. Carter answered the Amended Complaint on June 20, 2007.

---

[2] The filing of a section 523 complaint does not stop the entry of a discharge order. See Disch v. Rasmussen, 417 F.3d 769, 775 (7th Cir. 2005)(noting that "it is permissible as a procedural matter for a court to grant a discharge when no complaint objecting to discharge has been filed at the expiration of the 60-day period, notwithstanding a pending claim under § 523 seeking to exempt a particular debt from discharge.").

4

On September 25, 2007, Structured Asset filed an amended motion for summary judgment, arguing that it is entitled to judgment as a matter of law under sections 523(a)(2)(A) and (a)(2)(B), and sections 727(a)(3), (a)(4), and (a)(5) of the Bankruptcy Code. Carter filed a response to the amended motion for summary judgment, a memorandum in support, and his affidavit. Carter did not, however, file a concise response to Structured Asset's statement of material facts, containing a response to each numbered paragraph in Structured Asset's statement, including in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. *See* Local Bankruptcy Rule 7056-2(A)(2). Because Carter has not strictly complied with the Local Bankruptcy Rule, the material facts set forth in Structured Asset's statement of material facts are deemed admitted. Local Bankruptcy Rule 7056-2(B); *see also*, F.T.C. v. Bay Area Business Council, Inc., 423 F.3d 627, 633 (7th Cir. Aug. 25, 2005)("[b]ecause of the important function local rules . . . serve in organizing the evidence and identifying disputed facts, we have consistently upheld the . . . court's discretion to require strict compliance with those rules.").

The court also notes that Carter did not file a statement of any additional facts that require the denial of summary judgment, which he could have done pursuant to Local Bankruptcy Rule 7056-2(A)(2)(b). *See* Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1317 (7th Cir. 1995) (local summary judgment rules, "provide[] the only acceptable means of disputing the other party's facts and of presenting additional facts to the . . . court." ).

The deemed admission of facts does not, however, mean that Structured Asset is necessarily entitled to summary judgment. Rather, "even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper as a matter of governing law." Johnson v. Gudmundsson, 35 F.3d 1104, 1112 (7th Cir. 1994)(citations and internal quotation omitted).

5

It is well established that,

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S.Ct. at 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001).

This dispute involves sections 523(a) and 727(a) of the Bankruptcy Code. The court will review the section 727(a) claims first, because if Structured Asset is successful on at least one of its three claims under section 727(a), the 523 claims become moot. *See* In re Riley, 351 B.R. 662, 670 (Bankr. E.D. Wis. 2006); Matter of Krehl, 86 F.3d 737, 744 (7th Cir.1996)(proof of conduct satisfying any subsection of section 727(a) is sufficient to deny discharge).

Structured Asset's first 727 claim is under subsection (a)(3) which provides that the court shall grant a discharge, unless -

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Allegations of mutilation, destruction, or falsity of records have not been raised in this proceeding. Structured Asset only alleges that Carter failed to keep and maintain

6

records. The statute provides that in order to receive a discharge, a debtor is obligated to keep and preserve records from which his financial condition or business transactions might be ascertained. Id.; Union Planters Bank, N.A. v. Connors, 283 F.3d 896, 899 (7th Cir. 2002); In re Scott, 172 F.3d 959, 970 (7th Cir. 1999). The recordkeeping condition is in place in order to provide creditors "'enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" Connors, 283 F.3d at 899 (quoting In re Martin, 141 B.R. 986, 995 (N.D. Ill. 1992)). While there is no specific rigid standard governing the manner or quality in which records are kept and preserved, they should be kept and preserved in such a way so "courts and creditors [are not] required to speculate as to the financial history or condition of the debtor, nor . . . compelled to reconstruct the debtor's affairs." Matter of Juzwiak, 89 F.3d 424, 428 (7th Cir. 1996)(citations omitted).

The statute does not specify from what point in time prior to the petition date a debtor must keep and preserve records. In re Self, 325 B.R. 224, 241 (Bankr. N.D. Ill. 2005)(J. Squires). This court agrees with Judge Squires that "[t]he determination of what constitutes a reasonable period prior to the filing must be measured on a case-by-case basis, taking into account all of the circumstances of the case." Id. at 241-42. The Self case also involved a million dollar lottery winner who pledged his lottery installment payments, and, after accepting and spending a lump sum payout without advising or paying the secured creditor, filed a chapter 7 bankruptcy case. The creditor in that case (also Structured Asset) challenged the debtor's discharge. Judge Squires held that under the circumstances in that case, it was reasonable to require the debtor to maintain records from the date he received the lump sum payout. Id. at 242.

Whether a debtor meets the recordkeeping obligation and whether any failure to do so is

7

justified depends on the circumstances of the case. Id. at 241. Those circumstances can include the level of sophistication of the debtor, the level of the debtor's business activities, if any, and the number of transactions involved. See Juzwiak, 89 F.3d at 428; Connors, 283 F.3d at 900; Self, 325 B.R. at 240 (recognizing that while section 727(a)(3) "was not meant to bar the discharge of the ordinary consumer debtor, a sudden and large dissipation of assets, coupled with a lack of books and records will provide a basis for denial of a discharge under this section.").

The creditor has the initial burden to demonstrate that the debtor failed to keep adequate records from which the creditor can ascertain the debtor's financial condition. Self, 325 B.R. at 241. Importantly, "creditors do not need to prove that the debtor intended to defraud them to demonstrate a § 727(a)(3) violation." Juzwiak, 89 F.3d at 430. Once the creditor has met its burden, the burden shifts to the debtor to justify the lack of adequate records. Self, 325 B.R. at 242.

In this matter, it is undisputed that Carter produced six bank account statements from October 2000 to March 2001 - the time period immediately after receipt of the lump sum payment. The checks referred to in the statements and no other documents were produced. During his deposition, Carter was asked by Structured Asset to explain to whom and for what purposes numerous checks reflected on the statements were written. Carter recalled giving his wife a $100,000 check to "help with the kids." He did not recall what she actually did with the money, however. He explained that two checks made payable to South Suburban Dodge related to his purchase of a van for his wife and a car for his mother. Carter was unable to account for numerous other relatively large checks referenced in the bank statements. He offered that a substantial amount of the money was gambled and lost in Las Vegas and on casino boats. He failed, however, to produce any documents relating to the gambling trips.

The court concludes that Structured Asset has demonstrated that there is no genuine issue that Carter has failed to keep and preserve adequate records from which his financial condition can be ascertained under the circumstances of this case involving the admitted receipt and rapid dissipation of a substantial amount of money that Carter recognized was pledged to Structured Asset. Structured Asset, however, has not met its burden as the movant on summary judgment to show that there is an absence of evidence to justify Carter's failure to keep and preserve documents. Structured Asset does not even discuss the issue of justification. The court therefore denies summary judgment on the section 727(a)(3) claim.

Structured Asset further contends that Carter's discharge should be denied under section 727(a)(4), which provides, in pertinent part, that the court shall grant the debtor a discharge unless -

> the debtor knowingly and fraudulently, in or in connection with the case -
>
> (A) made a false oath or account.

11 U.S.C. § 727(a)(4). Structured Asset argues that Carter's listing of its secured claim on Schedule F (unsecured debts) as opposed to Schedule D (secured debts) and his failure to report his receipt of the lump sum lottery payout in the Statement of Financial Affairs are knowing and fraudulent false oaths.

To prevail on a section 727(a)(4) claim, the creditor must establish that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case." Self, 325 B.R. at 245 (citations omitted). Intent to deceive may be "inferred from circumstantial evidence or by inference based on a course of conduct." Id. at 248.

9

Structured Asset has established that there is no genuine issue that Carter made the statements under oath. The Schedules and Statement of Financial Affairs were verified by Carter under penalty of perjury.

Structured Asset, however, has not demonstrated at least one of the remaining four required elements with respect to the two statements at issue. First, the failure to report the Indiana Lottery's distribution of the lump sum payout in the Statement of Financial Affairs cannot be considered false. Structured Asset contends that the distribution should have been listed in the Statement of Financial Affairs (presumably in response to question number 2 which requires debtors to disclose income other than from employment or operation of business). The question, however, only requires the reporting of such income if it was received in the two years immediately preceding the filing of the petition. Here, it is undisputed that the disbursement occurred in October 2000, more than two years prior to the Petition Date. Carter was therefore not obligated to report his receipt of the payout on his Statement of Financial Affairs. Accordingly, Carter's answer "none" in answer to question number 2 was not false because of the failure to report the payout. *See* Self, 325 B.R. at 246, n. 5 (debtor did not make a false statement under oath for not reporting a transfer he was not required to list in the Statement of Financial Affairs). As for the placement of Structured Asset's claim on Schedule F as opposed to Schedule D, the court will not infer intent to deceive from the mere alleged misplacement. The court denies summary judgment on the section 727(a)(4) claim.

Finally, Structured Asset urges denial of discharge under section 727(a)(5), which provides that the court shall grant the debtor a discharge, unless -

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). A bankruptcy court has "broad power to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets." In re Martin, 698 F.2d 883, 889 (7th Cir. 1983). The creditor has the initial burden "of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors." Self, 325 B.R. at 250. Once the creditor meets its burden, the burden shifts to the debtor to satisfactorily explain the loss. Id. To be satisfactory, the explanation "must consist of more than . . . vague, indefinite, and uncorroborated assertions by the debtor." Matter of D'Agnese, 86 F.3d 732, 734 (7th Cir. 1996)(citation and quotation omitted).

The court is not entirely convinced that documents to support an oral explanation are necessary in every case before the explanation is considered satisfactory. See Self, 325 B.R. at 250. Corroborating documents are preferable, but their absence may not necessitate denial of discharge for every debtor. In any event, it is clear that "[t]he explanation must be good enough to eliminate the need for the Court to speculate as to what happened to all the assets." D'Agnese, 86 F.3d at 735 (quoting In re Martin, 145 B.R. 933, 950 (Bankr. N.D. Ill. 1992)).

Section 727(a)(5) is not time-specific. Indeed, "[t]he exact time a court should look back depends on the case; there is no hard and fast rule." Self 325 B.R. at 250 (citing Olbur, 314 B.R. at 74). Granted, a court's review of lost assets is commonly focused on the two-year period prior to the petition date, but "[i]nquiries beyond the two-year period may be warranted." Id. (citing D'Agnese, 86 F.3d at 734, which expanded the focus to nine years pre-petition.)).

The creditor has the initial burden of showing that the debtor had "at one time substantial and identifiable assets that are no longer available for his creditors." Id. If the creditor meets that burden, the debtor must then "provide a satisfactory explanation for the loss." Id.

11

Here, Structured Asset has demonstrated that there is no genuine issue that Carter received and lost $328,370 within five years of the bankruptcy filing.[3] Structured Asset has also met its burden to show that Carter does not have evidence to support a satisfactory explanation for the large amount of the lost monies. Indeed, Carter has only provided a conclusory assertion that he has satisfactorily explained the loss and an offer to present testimony of the friends who went with him on his gambling trips. Conclusory assertions and promises of future evidence, however, are not sufficient to defeat a summary judgment motion. See Salvadori v. Franklin School Dist., 293 F.3d 989, 996 (7th Cir. 2002)("nonmovant must present definite, competent evidence in rebuttal" to defeat a summary judgment motion); Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)("a party seeking to defeat a motion for summary judgment is required to wheel out all its artillery" to demonstrate that a genuine issue of material fact exists); Maldonado-Denis v. Costello-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) ("motions for summary judgment must be decided on the record as it stands, not on a litigant's visions of what the facts might someday reveal.").

---

[3] Carter did not argue that he should not have to explain a loss occurring five years prior to the petition date. He merely argues that his explanation was satisfactory.

12

For the reasons stated, the court will enter an order denying the summary judgment motion with respect to sections 727(a)(3) and (a)(4) of the Bankruptcy Code and granting it with respect to section 727(a)(5). A judgment sustaining the discharge objection will be entered.[4] The section 523 claims need not be addressed as they are moot.

Dated: JUN 0 4 2008

ENTER:

Hon. Susan Pierson Sonderby
United   States   Bankruptcy   Judge

---

[4] The court will first enter an order reopening the bankruptcy case and vacating the mistakenly entered discharge order. *See* Disch, 417 F.3d at 779.

13